IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAULA L.,[1]

               Plaintiff,                           Civ. No. 6:18-cv-1693-MC

      v.                                   OPINION AND ORDER

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____

MCSHANE, Judge:

Plaintiff brings this action for judicial review of the Commissioner's decision denying her application for supplemental security income. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). On September 25, 2014, Plaintiff filed an application for benefits, ultimately alleging disability as of that date. Tr. 10.[2] After a hearing, the administrative law judge (ALJ) determined Plaintiff was not disabled under the Social Security Act. Tr. 10-21. Plaintiff argues the ALJ erred in finding her less-than fully credible, in rejecting the opinion of the examining psychologist, in failing to address a lay opinion, and in relying on VE testimony that diverged from the DOT. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

**DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

2 – OPINION AND ORDER

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262

F.3d 949, 953-54 (9th Cir. 2001).

The ALJ determined Plaintiff had the following severe impairments: affective disorder;

anxiety disorder; attention deficit hyperactivity disorder; drug and substance addiction; trigger

finger; bilateral carpal tunnel syndrome; and hearing loss. Tr. 13. The ALJ concluded Plaintiff

had the RFC to perform medium work with the following relevant limitations: can occasionally

handle, finger, and feel bilaterally; she can perform simple tasks; she can frequently work

independently, but only occasionally coordinate with others; she can tolerate only occasional

public contact; and she can occasionally adjust to changes in the workplace. Tr. 15. Plaintiff

argues the ALJ erred in not capturing the full extent of her limitations. The Court disagrees.

1. **The ALJ's Weighing of the Medical Opinions**

Plaintiff argues the ALJ erred in rejecting the opinion of examining psychologist

Christopher Corbett, Psy.D. On December 17, 2014, less-than three months after Plaintiff's

alleged onset date, Dr. Corbett examined Plaintiff for a Vocational Rehabilitation Evaluation

Report. Tr. 840. The ALJ summarized Dr. Corbett's report:

> Upon examination, the claimant smiled easily and was polite, but appeared
> anxious and easily overwhelmed. She gave up easily on some tasks, but was open
> to encouragement. She spoke quietly and tended to mutter a lot. Her focus and
> attention were poor. She was easily distracted and had a difficult time remaining
> on task. Her abilities working in short-term memories were limited. Clinical
> testing was not indicative of cognitive impairments; however, her immediate
> memory scored in the extremely low range. Dr. Corbett administered a standard
> intelligence test, Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV),
> which yielded a full-scale IQ score of 89 placing her in the low average range of
> general intellectual functioning.

Tr. 18.

The ALJ explained the weight he provided to Dr. Corbett's opinion in the context of the

record as a whole:

3 – OPINION AND ORDER

> The undersigned has further considered the December 2014 opinion of Dr. Corbett (12F). While the undersigned has given some weight to this opinion because it was based on an in-person examination, the examination was performed shortly after the claimant's date of sobriety, and the claimant's substance use appears to have affected the examination. Furthermore, the overall medical evidence of record shows that the [sic] many of the observations made by Dr. Corbett seem to have resolved over time with the claimant's longer period of sobriety.

Tr. 18.

Plaintiff argues the ALJ erred in rejecting the opinion, which Plaintiff argues demonstrates that she is disabled:

> The ALJ's assessment and rejection of the opinions of Dr. Corbett's multiple opinion [sic] was wholly inadequate. For starters, the ALJ did not even mention Dr. Corbett's opinion that Plaintiff is debilitated by her psychological problems.[3] Next, the ALJ rejected Dr. Corbett's opinion due to Plaintiff's drug use but the ALJ failed to consider that Plaintiff had been clean and sober for 206 days when Dr. Corbett's [sic] evaluated her. Tr. 19, 837. The file contains not a scintilla of evidence in support of the ALJ's wholesale rejection of all of Dr. Corbett's opinions on the basis of a temporal connection between Plaintiff's drug use and the exam. There is *no* evidence in the record upon which the conclusion can be rationally rested that Plaintiff's intoxication affected Dr. Corbett's testing and evaluation results. Finally, the ALJ referred to Dr. Corbett's "many observations" without further specification and noted without reference to the record that they "seemed" to resolve over time. Tr. 19. On its face this reasoning is not specific and legitimate.

Pl.'s Op. Br. 13.

Plaintiff's arguments are meritless. The ALJ did not issue a "wholesale rejection of all of Dr. Corbett's opinions." Instead, the ALJ concluded Dr. Corbett's evaluation, in light of the record as a whole, indicated Plaintiff could "perform simple routine tasks" while working with only occasional coordination with coworkers and occasional contact with the public. Tr. 15. These conclusions are supported by the record. For example, Dr. Corbett's testing revealed that with the exception of Immediate Memory (where Plaintiff scored "Extremely Low"), Plaintiff

---

[3] The ALJ acknowledged Dr. Corbett determined Plaintiff was "easily distracted and had a difficult time remaining on task," "her immediate memory scored in the extremely low range," and testing indicated her full-scale IQ was "in the low average range of general intellectual functioning." Tr. 18.

4 – OPINION AND ORDER

tested in the Low Average or Average ranges. Tr. 840. Dr. Corbett noted Plaintiff's "executive functioning skills are intact. Her intellectual testing shows that she functions in the low average range and is able to make plans and relate to others. No deficits in executive functioning were noted." Tr. 843. Dr. Corbett found Plaintiff "struggles to express herself but she performs physical tasks well. She will benefit from job placements that include active and physical responsibilities as opposed to direct customer communication such as a customer service job." Tr. 844. The ALJ accounted for these findings in Plaintiff's RFC.

Regarding Plaintiff's limitations from memory issues, the ALJ reasonably concluded that the examination occurred shortly after Plaintiff's sobriety date and "the claimant's substance use appears to have affected the examination." Tr. 19. Additionally, the ALJ noted the record as a whole indicated many of these issues "seem to have resolved over time with claimant's longer period of sobriety." Tr. 19. Plaintiff's argument that "there is *no* evidence in the record" that Plaintiff's substance use affected the results overlooks the report itself. When discussing Plaintiff's memory issues, Dr. Corbett noted:

> [Plaintiff] displays significant deficits in her short-term and working memories. Some of these memory difficulties are directly due to poor focus related to attention deficit disorder and *her memory will improve with the management of these symptoms. It is important to note that significant methamphetamine abuse also has a very detrimental effect on memory and it is unclear how much of her memory issues are due to her history of chronic and severe abuse of methamphetamine. She has been abstaining from methamphetamine for over 200 days, but it is important to note that methamphetamine can have lingering effects for over one year and it is not possible to know right now how her history of substance abuse is affecting her memory.*"

Tr. 844 (emphasis added).

As noted, Dr. Corbett examined Plaintiff three months after her alleged onset date and roughly six months after Plaintiff last used methamphetamine.[4] The conclusion that Plaintiff's symptoms improved–at least to the point where she was capable of simple, repetitive work with few workplace changes and restrictions on interacting with others–is supported by substantial evidence in the record. *See* Tr. 17 (citing numerous medical records indicating Plaintiff generally demonstrated alertness, normal mood and attention, and normal concentration). In April 2015, Plaintiff's provider noted she was alert and oriented to person, place, and time and "She has a normal mood and affect. Her behavior is normal. Thought content normal." Tr. 1030. In March 2015, Plaintiff's therapist noted "multi-tasking was difficult for her but she managed to get through it." Tr. 1147. In August 2016, Plaintiff's therapist noted "Orientation, judgment, insight, and memory all within normal limit. Attention, concentration, and thought content all within normal limits." Tr. 1124. Three months later, the therapist again noted Plaintiff's concentration, memory, and attention were all within normal limits. Tr. 1130. "[Plaintiff] was able to concentrate despite anxiety and thought process appeared coherent and introspective." Tr. 1132.

The ALJ did not err in weighing Dr. Corbett's opinion and concluding that despite Plaintiff's limitations, she was capable of performing simple, repetitive work with few workplace changes and limited interactions with others. Although Plaintiff argues another interpretation of the record is reasonable—i.e., that Dr. Corbett's opinion demonstrates she is disabled—that is not a legitimate reason for overturning the ALJ's conclusions. *See Gutierrez*, 740 F.3d at 523 ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting *Reddick*, 157 F.3d at 720-21)).

---

[4] Dr. Corbett noted Plaintiff's recent period of sobriety followed her "history of chronic and severe abuse of methamphetamine." Tr. 844.

6 – OPINION AND ORDER

2.  **The ALJ's Credibility Determination**

Plaintiff next argues the ALJ erred in finding her less-than fully credible as to the extent of her limitations. The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a wide range of factors in assessing credibility." *Ghanim v. Colvin*, 12-35804, 2014 WL 4056530, at \*7 (9th Cir. Aug. 18, 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007).

Plaintiff alleged severe limitations from PTSD and anxiety. In a function report, Plaintiff stated her PTSD makes her not want to leave the house alone. Tr. 299. She testified that although she rides the bus, "the anxiety of everybody on the bus all the time. It's pretty hard for me to deal with sometimes." Tr. 38. "And then another big thing is the anxiety that I have is –the more people than we have really right here. It's too much for me. And my memory issues is a concern, and staying focused or concentrated." Tr. 43. Plaintiff stated that although she attends AA meetings, "I don't participate because of PTSD concerns + letting others into my life.". Tr. 300.

The ALJ concluded Plaintiff's allegations regarding the severity of her limitations was not supported by the record as a whole. Tr. 16. Regarding her mental limitations, the ALJ noted that mental status examinations generally indicated Plaintiff was alert, oriented, able to cooperate, and demonstrated intact thought content. Tr. 17. The ALJ accounted for Plaintiff's limitations by "limiting the claimant to performing only simple routine tasks with few workplace

7 – OPINION AND ORDER

changes, and restrictions on interacting with others." Tr. 17. Additionally, as noted above, the ALJ reasonably determined that many of Plaintiff's limitations, as pointed out by Dr. Corbett, appeared to have resolved as Plaintiff experienced longer periods of sobriety. Tr. 19. These findings are supported by the record.

In November 2014, less-than six months after Plaintiff stopped using methamphetamine (and two months after her alleged onset date), Plaintiff stated she did not participate in AA meetings "because of PTSD concerns + fear of letting others into my life." Tr. 300. Notes from less-than six months later indicate "Client was engaged in the group process. She presented on time and was upbeat and energetic. Mutli-tasking was difficult for her but she managed to get through it." Tr. 1147. Plaintiff "was open and cooperative. She shared in detail her faulty thought processes . . .[and S]he accepted feedback from the other group members." Tr. 1145.

One year later, following a relapse, Plaintiff "was active in group by presenting examples and asking clarifying questions." Tr. 1103. She "Practiced avoidance and management with peers." Tr. 1107. In August 2016, Plaintiff was "actively engaged in conversation about goals from treatment." Tr. 1124. Three months later, notes from a therapy session indicated Plaintiff's memory, attention, and concentration were all within normal limits. Tr. 1132. "[Plaintiff] was able to concentrate despite anxiety and thought processing appeared coherent and introspective." Tr. 1133. Plaintiff was then discharged after two straight no-shows. Tr. 1133.

At the hearing, Plaintiff testified to significant limitations regarding her fingers. "But they lock–my fingers lock up, and I have to pry them open at times from anything repetitious I do like the day before." Tr. 43. "And the issues with my hands or whatever, I really have a hard time. I mean, in the morning, I can't even close them all the way shut, let alone open them all the way straight. . . . So my hands are a big issue for me. . . . Like opening a jar of anything, I can't do it.

8 – OPINION AND ORDER

I have to have help." Tr. 62. In addition to pointing to Plaintiff's daily activities, the ALJ

determined Plaintiff's alleged limitations were not consistent with the medical record. This

finding is support by the record.

As noted by the ALJ, Plaintiff's history of finger problems predated her alleged onset

date. At the hearing, Plaintiff stated she had issues with her fingers going back to 2006. Tr. 45.

Plaintiff also testified that the last couple of years, her fingers have "really been bothering me."

Tr. 45. The ALJ reasonably concluded Plaintiff's RFC was consistent with the medical record.

In January 2015, Plaintiff presented "complaining of left ring finger triggering." Tr. 1007.

Records indicated the corticosteroid injection Plaintiff received in April 2014 "was beneficial up

until a couple weeks ago." Tr. 1007. Plaintiff's range of motion in her fingers was "100% of

normal on flexion." Tr. 1008. Plaintiff experienced some finger locking which she resolved

without requiring the use of her right hand. Plaintiff received another injection and 'tolerated the

procedure well." Tr. 1008. Plaintiff presented with side pain two weeks later and the note

indicated her trigger finger had "resolved w/ injection." Tr. 1009.

Plaintiff was next seen 10 months later and the note referenced the January 2015

presentation for bilateral trigger finger. Tr. 1071. "At that time she was complaining of [left ring

finger] triggering and received a corticosteroid injection. She's had long-lasting benefits from

that injection." Tr. 1071. At that time, Plaintiff complained of triggering in her right long finger.

Tr. 1073. Plaintiff was scheduled for surgery in March 2016.

One week post-surgery, "Patient states that she is not in any significant pain nor does she

have any tingling, pins and needles or weakness into her right hand." Tr. 1075. Her hands were

sore because "she has been working at the homeless shelter helping with meals Patient thinks she

may have overdone a little bit." Tr. 1075. She exhibited full range of motion. Tr. 1075 ("Patient

can demonstrate full composite fist, full extension of fingers."). Plaintiff had some clicking in

her left ring finger and her physician scheduled surgery for June 2016. Tr. 1076. This note was

the last note regarding any appointment for any issues regarding Plaintiff's fingers.

Plaintiff suffered a brief methamphetamine relapse in May-2016. The record contains

notes from therapy sessions after Plaintiff's relapse. Notes from those sessions indicate Plaintiff

"Appeared focused and reports she is doing recovery based stuff daily." Tr. 1107. She

"Completed the weekly handout and participated in feedback. [Plaintiff] was active and asked

some clarifying questions." Tr. 1108. "[Plaintiff] was able to identify with the material and

provide some personal examples." Tr. 1122.In her last session before being discharged,

Plaintiff's therapist noted "[Plaintiff] was able to concentrate despite anxiety and thought

processing appeared coherent and introspective." Tr. 1132.

While Plaintiff presented after her relapse for foot or ankle issues after falling off a bus,

the only notes regarding her finger issues indicate "Trigger finger resolved w/ injection." Tr.

1167, 1170. The ALJ's determination that the medical record was inconsistent with Plaintiff's

alleged limitations is supported by the record.[5]

To summarize, the ALJ did not err in utilizing "ordinary techniques of credibility

evaluation" in weighing the validity of Plaintiff's self-reported limitations. *Ghanim*, 763 F.3d at

1163; *Lingenfelter*, 504 F.3d at 1040. Although Plaintiff argues another interpretation of the

record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *See*

*Gutierrez*, 740 F.3d at 523 ("If the evidence can reasonably support either affirming or reversing,

'the reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting

*Reddick*, 157 F.3d at 720-21)). Because the ALJ provided "specific, clear and convincing

---

[5] In December 2014, Dr. Corbett described Plaintiff's motor skills as, "She denied any physical problems and not [sic] deficits in motor skill were noted." Tr. 843.

reasons" for finding Plaintiff less-than credible regarding the extent of her limitations, the ALJ did not err in giving little weight to Plaintiff's testimony regarding those limitations.[6] *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Chater*, 80 F.3d 1273,1282 (9th Cir. 1996)).

## CONCLUSION

The ALJ's decision is free of legal error and supported by substantial evidence.[7] The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 20th day of July, 2020.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge

---

[6] Ms. Powers provided a third-party function report that largely mirrored Plaintiff's own allegations regarding her limitations. Because the ALJ's reasons for rejecting Plaintiff's testimony apply equally to the testimony of the third party report, the ALJ did not err in describing Ms. Powers's report despite giving it no weight. *Molina*, 674 F.3d at 1122.

[7] The ALJ identified two occupations an individual with Plaintiff's RFC could perform. Tr. 20. Although Plaintiff argues the occupation of call-out operator conflicted with the DOT, any error is harmless as Plaintiff points to no such error with regard to the occupation of line bakery worker. *Molina*, 674 F3d at 1115.

11 – OPINION AND ORDER